**Donald L. HOLDEN and Wife, Jewell Jones Holden, Appellants,**

v.

**Charles Travis WEIDENFELLER; Roy Weidenfeller; Dayton Weidenfeller; Wilbert Roger Weidenfeller and James Darvin Lester Weidenfeller, Appellees.**

No. 04–95–00351–CV.

Court of Appeals of Texas, San Antonio.

Aug. 30, 1996.

Rehearing Overruled Sept. 18, 1996.

Randall B. Richards, The Law Offices of Randall B. Richards, Boerne, for Appellants.

Lavern D. Harris, Harris & Harris, P.C., Kerrville, for Appellees.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

## OPINION

CHAPA, Chief Justice.

This is an appeal from the trial court's judgment asserting that appellees possess an easement over appellants' property. In five points of error, appellants contend that (1) the evidence is legally and factually insufficient to support the trial court's findings, (2) the trial court erred in denying appellants injunctive relief, and (3) the trial court erred in refusing to allow appellees' legal expert to testify. The judgment of the trial court will be affirmed as reformed.

### FACTUAL AND PROCEDURAL BACKGROUND

This is a dispute over appellees' right to use a road travelling over a portion of appellants' ranch in order to access their own ranch. The boundaries and roads in question are reproduced below.

Around the turn of the century, Henry Meier owned what is now the Holden ranch ("Meier/Holden ranch"). His daughter, Bertha Schupp, and her husband owned a portion of what is now the Weidenfeller ranch ("Schupp/Weidenfeller ranch"). In 1909, Meier conveyed a 53 acre tract of land to his daughter. This 53 acre tract of land is the only unity of ownership between the two properties at issue.

A portion of the deed transferring the 53 acre tract reads as follows:

> ... Provided however that the grantor herein [sic] right of way over the said premises and the said Bertha Schupp shall keep open a private road across the S.W. portion of said premises as now traveled, for the public generally, until permission to close same up, is given by the grantor herein.

The deed clearly indicates, that at the time of conveyance, there was a road ("old road") in existence between the two properties. The old road still exists.

It is undisputed that the old road travels from Highway 1376, the Sisterdale Road, through the Meier/Holden ranch, enters for a short distance the Schupp/Weidenfeller ranch, reenters the Meier/Holden ranch and stops at the interior thereof. There was never an express or written easement granted by Meier or his successors in title to the Schupps or their successors in title regarding the old road, but apparently the road has been used continually to access the Schupp/Weidenfeller ranch from the Sisterdale road. The old road has been the only means of ingress and egress between a public road and the Schupp/Weidenfeller ranch.

Part of the controversy in this case arises from 4.7 acres of land from what is known as the Brodbeck survey. This strip of land lies between the Meier/Holden ranch and the Sisterdale Road. It is undisputed that this strip of land is now part of the Meier/Holden ranch. The Holdens received a declaratory judgment to this effect in 1994. The Weidenfellers contend, and the trial court found, that the 1994 judgment just reiterates the fact established long ago—that the 4.7 acres has always been a part of the Meier/Holden property.

The trial court found that, at the time of the conveyance of the 53 acre tract to his daughter, Meier believed that he possessed an unsurveyed 5,092.62 acre tract of land. When the land was ultimately sold by Meier's sons, it was finally surveyed. At that time, it was discovered that the tract actually contained 5,155.20 acres, including 4.7 acres in the Brodbeck survey. Nevertheless, the Holdens contend that, at the time of the conveyance of the 53 acres, the 4.7 acres was owned by someone else.

The Holdens contend that when they bought their ranch, there was no evidence of any type of easement over their land, and that they never saw anyone use the old road until a year after they took possession. They further argue that they have maintained the road at their own expense. They allege that they gave the Weidenfellers permission to use the old road, but not a legal right to do so.

In 1975, a controversy arose regarding the old road between the Sisterdale Road and the Weidenfeller property. Apparently, the Weidenfellers were leasing their property to hunters and had given the keys to the gates at the Sisterdale Road and the ranch itself to several individuals. This resulted in quite a bit of traffic on the old road, which created muddy and dusty conditions on the road. Also, the lights of the cars traveling the road shone into the Holdens' home and into the home of their ranch foreman.

In response to this inconvenience, the Holdens built a new road for the Weidenfellers to use. The new road comes off of the Sisterdale road, bypasses the residences on the Meier/Holden ranch, and ends at a point on the Schupp/Weidenfeller ranch which was not part of the original 53 acre transfer. The Holdens notified the Weidenfellers that they were to finish the new road from that point, having it end at any point they wished on the Weidenfeller property. The Weidenfellers, however, claimed a right to use the old road and refused to construct the remainder of the new road. They continued to use the old road.

The Holdens sued for a declaratory judgment that the Weidenfellers have no easement or other legal right to enter the Meier/Holden ranch at all, and, in the alternative, if the Weidenfellers do have an easement, for a permanent injunction prohibiting the use of the Meier/Holden ranch to access the Schupp/Weidenfeller ranch. Following a bench trial, the trial court entered findings of fact and conclusions of law in which it determined that the Weidenfellers have both an easement by estoppel and an easement appurtenant by implied grant across the Holden property.

The trial court concluded that the easement begins at the Sisterdale Road and continues along the old road up to the point that the Holdens constructed a new road, the easement then continues along the new road until it reaches the Weidenfeller property. The trial court further concluded that if for any reason it is determined that the Weidenfellers do not possess an easement by estoppel or by implied grant, the road in question is a public road.

## ARGUMENTS ON APPEAL

In their first, third, and fourth points of error, appellants contend that the evidence is legally and factually insufficient to support the trial court's finding that the Weidenfellers have an easement appurtenant by implied grant, an easement by estoppel, or that the road in question is a public road.

### A. Standard of Review

■ When a case is tried to the court and findings of fact and conclusions of law are entered, the findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the jury's answers in a jury trial. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ).

■ When reviewing a legal insufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support the trial court's finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). As such, if there is more than a scintilla of evidence to support the finding, the legal insufficiency point fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

■ When reviewing a factual sufficiency point, we must consider all of the evidence that both supports and is contrary to the trial court's finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). Once the evidence has been examined, the finding shall be set aside only when the supporting evidence is so weak that the result is clearly wrong or manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### B. Easement Appurtenant by Implied Grant

■ The elements of an easement appurtenant by implied grant are as follows: 1) unity of ownership between the dominant and servient estate; 2) apparent use of the

easement at the time the dominant estate was granted; 3) use of the easement was continuous so that the parties intended its use to pass by grant with the dominant estate; and 4) the easement must be reasonably necessary to the use and enjoyment of the dominant estate. *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex.1966); *Ortiz v. Spann*, 671 S.W.2d 909, 911 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The burden of establishing these elements is on the party claiming the easement. *Wilson v. McGuffin*, 749 S.W.2d 606, 609 (Tex.App.—Corpus Christi 1988, writ denied). Whether these requirements have been met are to be determined at the time of severance. *Westbrook v. Wright*, 477 S.W.2d 663, 666 (Tex.Civ. App.—Houston [14th Dist.] 1972, no writ).

■ The Holdens contend that the elements of an implied easement cannot be established on the facts of this case. We agree. The trial court determined that the Weidenfellers possess[ed] an implied easement along the new road that appellants constructed. This road enters the Schupp/Weidenfeller ranch at a point that was not a part of the original 53 acre conveyance from Henry Meier to his daughter. Therefore, there was never unity of title between the dominant and servient estates.

■ The Weidenfellers argue that appellants may not now complain that the easement does not connect to the original 53 acres because they moved the easement themselves and insisted that appellees use the new road. However, the fact that appellants moved the road in question does not dispense with the requirement that there be unity of title between the dominant and servient estate at the time of severance. Such requirement is an essential element to the existence of an implied easement; *Johnson v. Dale*, 835 S.W.2d 216, 220 (Tex.App.—Waco 1992, no writ), and absent all the necessary elements, an implied easement cannot exist. *See Ortiz*, 671 S.W.2d at 911 (stating the requirements of the establishment of an implied easement appurtenant must be strictly adhered to).

■ The same is true for the elements of apparent and continuous use. The existence of an implied easement depends on the apparent and continuous use of the easement *at the time of severance*. *Bickler*, 403 S.W.2d at 357. The new road, along which the trial court determined there was an implied easement, did not exist until the Holdens completed it in 1989. The severance of the dominant and servient estates in question took place in 1909. As such, it is impossible to find that the use of the new road was apparent and continuous at the time of severance.

■ Because the evidence clearly indicates that there was no unity of title at the time of severance between the Meier/Holden property and the portion of the Schupp/Weidenfeller property accessed by the new road and that the road in question did not even exist at the time of the severance, there is simply no justification as a matter of law for the trial court's grant of an implied easement appurtenant along the new road.

■ We also find that an implied easement cannot exist along the old road. While the evidence supports a finding that the use of the old road was apparent and continuous at the time the 53 acre tract was severed from the Meier/Holden property, there is no evidence to support a finding that there was unity of ownership between the dominant and servient estates at the time of severance.

If an easement was impliedly granted at the time of severance, it would have necessarily traveled along the old road from the Sisterdale Road up to the entrance of the Schupp/Weidenfeller property at the original 53 acre tract. In order to impliedly grant an easement appurtenant over the entire length of the old road, Meier would have to have owned all of the property over which the road traveled at the time the dominant and servient estates were severed in 1909. *See Duff*, 311 S.W.2d at 640 (holding easement may not be established over land of a stranger in title).

At trial, a question was raised regarding the ownership of the 4.7 acre tract of land between the Sisterdale Road and the Meier/Holden property. Without proof of unity of title between this 4.7 acre tract and the Schupp/Weidenfeller property at the time of

severance in 1909, an easement from the Schupp/Weidenfeller ranch reaching all the way to the Sisterdale Road cannot exist. *See Bickler,* 403 S.W.2d at 357 (setting out elements of implied easement).

Appellees contend that the evidence is sufficient to support the finding that the 4.7 acres was a part of Meier's property at the time he granted the 53 acres tract to his daughter. However, we find no evidence in the record to indicate that Meier owned the 4.7 acre tract of land between his property and the Sisterdale Road in 1909.

All of the evidence on this point indicates either ownership or possession of the 4.7 acres by Meier and his successors in title from 1933 to the present, but not at the time the 53 acre tract was conveyed. For example, when a fence-line survey was performed in 1948, it indicated that the 4.7 acres in question was included on the Meier/Holden property. Further, the record contains a deed dated 1948 in which the Meiers conveyed their interest in the property, including the 4.7 acre tract, to a Mr. R.W. DePuey, Trustee. As such, there is evidence that the Meiers possessed the 4.7 acre tract in 1948; however, none of this constitutes proof that Meier owned or possessed the 4.7 acre tract in 1909.

There was also testimony form Robert Fritz, whose father owned the Schupp/Weidenfeller property from 1933 to 1943 and who lived on the property from 1935 through 1943. Fritz testified that it was common knowledge in the community that the Meier ranch ran all the way up to the Sisterdale Road. However, Fritz' basis of knowledge begins in 1933, when his family purchased the Schupp/Weidenfeller property. Again, this is no evidence that Meier owned the 4.7 acre tract abutting the Sisterdale Road in 1909.

Most damaging to the appellees' theory of unity of title between the Schupp/Weidenfeller property and the 4.7 acre tract in question is the fact that, in 1909, title to the 4.7 acre tract was in the name of Hermann Beckman, not Henry Meier. The record also reflects that the 4.7 acre tract was transferred through a series of conveyances between Hermann Beckman and his successors

in title up until 1933. Absent proof to the contrary, this evidence requires a presumption that Henry Meier did not own or possess the 4.7 acres in 1909.

The old road, along which an easement is claimed, must cross the 4.7 acre tract in order to reach the Sisterdale Road. It is reasonable to assume that Meier, his family, and his successors in title did in fact cross the 4.7 acre tract when traversing the old road up to and at the time Meier granted the 53 acre tract to his daughter. However, all of the evidence leads to the presumption that the 4.7 acre tract was owned by Hermann Beckman in 1909 and not by Henry Meier. Therefore, the only reasonable inference to make from these facts is that, at the time of the severance in question, Meier crossed the 4.7 acre tract with the permission of the owner.

While the evidence indicates that Meier obtained possession, of the 4.7 acre tract by at least 1948, we have no evidence before us that would support a finding that Meier had adverse title or otherwise possessed the 4.7 acre tract in 1909. As such, there is no unity of title between the 4.7 acre tract and the Schupp/Weidenfeller property.

There is, therefore, no evidence to support a finding of an implied easement from the old road which leads from the Sisterdale Road, across the Meier/Holden property, and up to the Schupp/Weidenfeller property. *See Koonce v. Brite Estate,* 663 S.W.2d 451, 452 (Tex.1984) (holding establishment of unity of ownership to support implied easement required proof that prior to severance, grantor owned the dominant and servient estates as a single unit).

· Appellants' first point of error is sustained.

In their second point of error, appellants contend that the trial court erred in denying injunctive relief when it found an implied grant of an easement appurtenant over the Holden property because such easement, if it exists, is being misused. Because we have sustained appellant's first point of error and found that, as a matter of law, there can be no implied easement over the Holden property between the Sisterdale Road and the

Weidenfeller property, it is unnecessary to address appellants' second point of error.

## C. Easement by Estoppel

■ In their third point of error, appellants contend that the evidence is legally and factually insufficient to support the trial court's finding of an easement by estoppel. The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the owner of the alleged dominant estate. *See Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 209 (Tex. 1962).

■ Three elements are necessary to the creation of an easement by estoppel: 1) a representation communicated, either by word or action, to the promisee; 2) the communication was believed; and 3) the promisee relied on the communication. *Storms v. Tuck,* 579 S.W.2d 447, 452 (Tex.1979). These elements apply at the time the communication creating the alleged easement is made. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 872 (Tex.App.—Austin 1988, writ denied). An easement by estoppel, once created, is binding upon successors in title if reliance upon the existence of the easement continues. *See Shipp v. Stoker,* 923 S.W.2d 100, 102 (Tex.App.—Texarkana 1996, n.w.h.).

■ The doctrine of easement by estoppel is not applied as strictly as the doctrine of implied easement. *Payne v. Edmonson,* 712 S.W.2d 793, 796–97 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Being an equitable doctrine, it has not been clearly defined and its application must depend on the unique facts of each case. *Wilson v. McGuffin,* 749 S.W.2d 606, 610 (Tex.App.—Corpus Christi 1988, writ denied).

Appellants contend that there is no evidence of any misrepresentation on the part of Henry Meier or his successors in title, including themselves, regarding the use of the road across their property as a means of ingress and egress to the Weidenfellers' property. According to appellants, the Weidenfellers' use of the road was simply permissive. We disagree.

Henry Meier, in the 1909 deed of the original 53 acre tract to his daughter, referenced the road in question. The language of the deed implies that the Schupps had the right to use the road to access their property from the Sisterdale road, the only nearby public road, as it prohibits the Schupps from closing up the portion of the road that crossed their land and that was used by the public in general. This is particularly true in light of the fact that the Schupp/Weidenfeller property was, and is, landlocked without the use of the old road to access the Sisterdale Road.

Further, the evidence clearly establishes that the road was used for ingress and egress to the Schupp/Weidenfeller property since, at the very latest, 1933. Robert Fritz, whose father bought the land from the Schupps in 1933, testified that the road was the only road used to access the property while his family owned the land. He further testified that his father bought the Schupp/Weidenfeller property with the understanding that the old road was the means of access.

Dayton Weidenfeller testified that his father purchased the Schupp/Weidenfeller property from Fritz in 1943 and that his family believed that, based upon the previous use of the road, they too had a right to access their property via the old road. He further testified that the old road has been used continuously since 1943 as a means of ingress and egress to the Schupp/Weidenfeller property from the Sisterdale Road.

In fact, the Holdens themselves have encouraged the Weidenfellers' belief in their right to cross the Meier/Holden property in order to access their own property. The Holdens purchased the Meier/Holden property in 1968, after the Weidenfellers had been using the old road for 35 years. The Holdens' made no complaint of such use for approximately 7 years. In fact, when Donald Holden decided to lock the entrance gate to his property at the Sisterdale Road, he informed the Weidenfellers that he would cut the chain so that the Weidenfellers could put

their own lock on the gate in order to gain access.

When the Weidenfellers' use of the road began to disturb the Holdens, the Holdens built a new road for the specific purpose of providing the Weidenfellers a means of accessing their property from the Sisterdale Road. This action itself indicates the Holdens' knowledge of the Weidenfellers' right to cross their land in order to access the Schupp/Weidenfeller property from the Sisterdale Road.

Moreover, the evidence supports a finding that the Weidenfellers and their predecessors in title relied on their belief that they had a right of way over the old road. The Schupps built a large house very near the point where the old road intersects the Schupp/Weidenfeller property. There was testimony from both Robert Fritz and the Weidenfeller brothers that significant amounts of labor and money went into improving the Schupp/Weidenfeller property over the years. Further, Fritz and the Weidenfellers also testified that they contributed to the maintenance of the old road itself when the need arose.

It is reasonable to infer from this evidence that such efforts would not have been made to improve an inaccessible ranch. It is undisputed that the Weidenfellers have no means of access other than the road in question. As such, the claimed easement in this case has a direct and substantial relationship to the value of the use and enjoyment of the Schupp/Weidenfeller property. *See North Clear Lake Development Corp. v. Blackstock,* 450 S.W.2d 678, 683 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.)(finding easement by estoppel where evidence showed expenditures of money and effort in making improvements that could be enjoyed by owners of dominant estate only through the use of the claimed easement).

Clearly, there is evidence in this record from which the trial court could have reasonably inferred that Henry Meier and his successors in title, by their conduct, led the owners of the Schupp/Weidenfeller property to believe that they had a right to use the road in question and that such right was

relied upon. *See Wallace v. McKinzie,* 869 S.W.2d 592, 596 (Tex.App.—Amarillo 1993, writ denied)(holding that permissive and acquiescing behavior of owner of servient estate created easement by estoppel where road had been used for over seventy years to access landlocked property).

Under these circumstances, we conclude that the doctrine of easement by estoppel applies in this case. However, we disagree with the trial court's finding that the easement by estoppel lies over the new road constructed by the Holdens' in 1989. The evidence supports a finding of an easement by estoppel over what was established at trial as the old road, leading to the Schupp/Weidenfeller ranch headquarters.

The Holdens contend that there can be no easement by estoppel against a subsequent purchaser who has no notice of the easement claimed. *See Lakeside Launches,* 750 S.W.2d at 873. According to the Holdens, they had no notice of any claim of right of way across their land when the land was purchased, and are, therefore, bona fide purchasers. Again, we disagree.

An easement by estoppel cannot be extinguished by a successor in title where the deed referencing a possible easement was recorded. The deed from Meier to his daughter referencing the road should have put the Holdens on notice of a potential claim of right of way.

Even if the Holdens had been unaware of the deed, as they claim to be, Donald Holden acknowledges seeing a gate from the old road onto the Schupp/Weidenfeller ranch in plain view before he bought the property. Without having inquired about the use of the gate and the road, the Holdens may not now assert that they were unaware of a claimed right of way over their property.

Appellants' third point of error is overruled.

## D. Public Dedication

In their fourth point of error, appellants contend that the evidence is both legally and factually insufficient to support the trial court's conclusion that the a road was publicly dedicated across the Meier/Holden proper-

ty. We find it unnecessary to address the merits of appellants' contention as the trial court's conclusion regarding a public dedication is irrelevant to the judgment on appeal.

In its conclusions of law, the trial court states that if for any reason it should be determined that the Weidenfellers do not have an easement by estoppel or an implied easement across the Holdens' property, the road found to be an easement is instead a public road. The judgment on appeal, however, makes no mention of a public road.

Instead, the judgment states that the Weidenfellers are "declared to have and established as having a free and uninterrupted ... access roadway easement ... across the land owned by [the Holdens] for the free and uninterrupted access to the lands owned by [the Weidenfellers]." The trial court's judgment further provides that "each party shall have the right to maintain a lock ... locking the manually operated gate at the beginning point of the ... [e]asement and the Sisterdale Road."

 The trial court clearly found that the Weidenfellers possessed a private easement over the Holden property. The conclusion of law regarding a public road is worded in the alternative and is contingent upon a subsequent finding that an easement over the Holden property does not exist. Because we have determined that an easement does in fact exist in favor of the Weidenfellers, we need not consider the trial court's alternate conclusion regarding a public road. *See Van Brunt v. BancTexas Quorum, N.A.,* 804 S.W.2d 117, 123 (Tex.App.—Dallas 1989, no writ).

## E. Exclusion of Evidence

In their fifth and final point of error, appellants contend that the trial court erred in excluding the expert testimony of William Lozano. At trial, appellants attempted to offer the deposition testimony of Lozano as evidence. Lozano, an attorney, is board certified in property law. In addition to maintaining a private legal practice, he was an adjunct and visiting professor of property law at St. Mary's University for 40 years. He has since retired.

Lozano's deposition testimony consisted of his opinion, based upon his review of the pleadings, depositions and documents on file in this case, regarding whether an easement appurtenant, an easement by estoppel or a public dedication exists in this case. The trial court excluded his testimony, deeming it inadmissible expert testimony on questions of law. Appellants argue that Lozano's opinions were based upon the facts of the case as he understood them, and therefore, his testimony was admissible as a mixed question of law and fact.

 An expert witness may not testify regarding his opinion on a pure question of law. *Schauer v. Memorial Care Sys.,* 856 S.W.2d 437, 451 (Tex.App.—Houston [1st. Dist.] 1993, no writ). An expert may, however, offer his opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 365 (Tex.1987).

Texas case law provides little guidance in the determination of exactly what constitutes a mixed question of law and fact. One court has described such a question as one in which a standard or measure has been fixed by law and the question is whether the person or conduct measures up to that standard. *Crum & Forster, Inc. v. Monsanto Co.,* 887 S.W.2d 103, 134 (Tex.App.—Texarkana 1994), *jm't vacated on agreed motion of parties,* No. 06–92–00100–CV, 1995 WL 273592 (Tex. App.—Texarkana, March 9, 1995, no writ). The classic example of a mixed question of law and fact is whether certain actions constitute negligence. *See Birchfield,* 747 S.W.2d at 365.

Under these guidelines it appears that the questions presented to Lozano were indeed mixed questions of law and fact. There are certain legal elements that need to be established in order for an implied easement, an easement by estoppel, and a public dedication to exist. Lozano, based upon his review of the documents on file in this case, offered his opinion as to whether such elements had been satisfied by the facts. To the extent that Lozano discussed both the law and its application in the factual context at issue, the

testimony comprised a mixed question of law and fact. *See Monsanto,* 887 S.W.2d at 135.

■ Nevertheless, we do not find that the trial court erred in excluding Lozano's testimony. For a mixed question of law and fact to be admissible, it must meet the requirements applicable to expert testimony in general, and, in particular, it must be helpful to the trier of fact pursuant to TEX.R. CIV. EVID. 702. *Louder v. De Leon,* 754 S.W.2d 148, 149 (Tex.1988). Wide discretion is afforded the trial court in determining whether to admit or exclude expert testimony regarding the ultimate issues before the trier of fact. *Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 761 (Tex.App.—El Paso 1993, writ denied).

■ In the present case, the excluded testimony proffered by appellants regarded the ultimate issues before the trial court. That is, whether an implied easement, easement by estoppel, or publicly dedicated road exists over the Holden property. In order for such testimony to be admissible, even under the *Birchfield* standard, appellants were required to meet the threshold burden of showing that Lozano possessed greater knowledge, skill experience, and education than the trial court. *See* TEX.R. CIV. EVID. 702.

This is an extremely difficult burden to meet given that the expertise at issue in this case is legal expertise and the trial judge is presumed to have specialized competency in all aspects of the law. The result might have been different had the expertise involved been scientific or technical in nature. Under the circumstances, however, the trial court, a legal expert itself, was perfectly capable of applying the law to the facts and reaching a conclusion without benefit of expert testimony from another attorney.

As such, we can not declare that the trial court abused its discretion in excluding the testimony of a legal expert regarding the ultimate issues before the court. Furthermore, even if we were to find that the trial court abused its discretion in excluding Lozano's testimony, we find no harm to appellant as a result of such exclusion. *See* TEX.R.APP. P. 81(b)(1).

Although the trial court excluded Lozano's testimony from evidence, it noted on the record that it would take the testimony under advisement as legal argument. The purpose of the testimony, as appellants admit, was to lend credibility and strength to their position. Because the case was tried to the bench and not to a jury, there is little distinction between the judge's consideration of the testimony as either legal argument or as evidence. As such, the desired result of Lozano's testimony was achieved.

In order to find harm, we must presume that had Lozano's testimony been considered as evidence, the trial court would have ruled according to Lozano's opinions. Given that Lozano's testimony was taken under advisement, we are unable to make this determination. Appellants' fifth point of error is overruled.

## CONCLUSION

We conclude that appellees do not possess an easement appurtenant by implied grant over appellants' property. We further conclude that appellees do possess an easement by estoppel over appellants' property. We are reforming the trial court's judgment to reflect that such easement by estoppel is permanently located over what is described in the trial court's judgment as the "Ninety (90) Day Temporary Access Easement," and not over what is described in the trial court's judgment as the "Weidenfeller Thirty–Five Feet (35′) Access Roadway Easement." The judgment of the trial court is affirmed as reformed.

GREEN, J., dissents.

GREEN, Justice, dissenting.

I agree that the Weidenfellers have failed to establish an easement by necessity or the dedication of a public road. But because I also believe the Weidenfellers have failed to prove the essential elements for the creation of an easement by estoppel, I respectfully dissent.

"In order to create an easement by estoppel, something must be said or done by the owner of the servient estate *at the time of the grant of the dominant estate* that induces

the acceptance of the grant." *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 872 (Tex.App.—Austin 1988, writ denied) (italics added). In this case, however, there is no evidence whatsoever that Henry Meier (the owner of the purported servient estate) made any representations to his daughter, Bertha Schupp (the grantee of the purported dominant estate), which could be interpreted as inducing her to accept the grant of the 53 acre tract of land from her father.

The majority's analysis is flawed because it ignores critical facts. First, Bertha Schupp and her husband already owned acreage immediately adjoining the 53 acre tract in question, which acreage could be accessed without crossing her father's property. Second, and perhaps most important for this analysis, Henry Meier *gifted* the 53 acre tract to his daughter.

The conveyance of the 53 acres to Bertha Schupp was a gift from father to daughter in consideration of "the natural love and affection I have and bear for my said Daughter ..." and as an advancement on her share of her parents estate. No inducements were involved. The only reasonable inference from the evidence is that Bertha Schupp accepted the land without reservation or condition as a most grateful beneficiary. And while the language of the gift deed reserves the right of *the grantor* to maintain access across the 53 acres for an indefinite period of time, there is nothing to suggest that Schupp relied on any right of access across her father's property *for herself* as a condition of her accepting the gift of the 53 acres.

In the absence of evidence that Bertha Schupp relied on any representation of her father that she would have access to the 53 acres across his property, as an inducement to her accepting the property, the Weidenfellers have failed to establish an easement by estoppel across the Holden ranch.

I would reverse the judgment below and would render in favor of the Holdens.