OPINION HEADING PER CUR 









                NO. 12-05-00210-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

            

 

EDWIN
J. CARPENTER AND

JOHN
LAWSON MEYER,   §          APPEAL FROM THE 354TH

APPELLANTS
AND 

CROSS-APPELLEES

            

V.        §          JUDICIAL
DISTRICT COURT OF

 

JESSE
MORRIS, JR. AND

REBECCA
MORRIS,           §          RAINS COUNTY, TEXAS

APPELLEES
AND 

CROSS-APPELLANTS




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            This appeal arises out of a dispute between adjoining
land owners over the use of Private Road 5302 (“the road”) in Rains
County.  Edwin J. Carpenter and John
Lawson Meyer complain, in two issues, that the trial court erred in failing to
declare that the road is a public road and in failing to find that Carpenter has
an easement by estoppel over the road where it crosses the land of Jesse and
Rebecca Morris.  The Morrises, by
cross-appeal, contend that the trial court erred when it determined Meyer has
an easement by estoppel over the road as it crosses their land.  We reverse the trial court’s judgment in part,
render a take nothing judgment for the Morrises against Meyer, and affirm the
remainder of the judgment.  

 

Background








            On January 21, 2003, Carpenter and Meyer filed a suit for
declaratory judgment against the Morrises and Jessie and Lenora Boyd seeking to
have the road declared a public roadway or, in the alternative, asserting
easement rights in the roadway.  A bench
trial followed.  The evidence showed that
the road’s history dates back to the 1940s. 
At some point, the county maintained it. 
However, the Rains County Commissioners Court voted to discontinue
service of the road on May 9, 1964.  The
commissioners court’s action was based upon a petition signed by eight
citizens, including Meyer’s father, C.B. Meyer. 
The road had been used to haul gravel from the 705 acre Meyer farm, but
the commissioners court’s minutes stated that the road is “now impossible to
travel.”  Testimony at trial showed that
the road had been used by the public before 1964.  








            In 1968, Paul Stinson and his brother-in-law, Leland
Robinson, purchased the real property upon which the road runs from CR 1300 (“county
road”) to what is now the Meyer and Carpenter tracts.  Stinson testified that the road was covered
with vegetation and could not be driven over in a vehicle when they bought the
property.  Stinson said that he used
equipment from his construction business to clean up the road in 1971 and make
it passable.  He placed gravel on the
road and put up a metal gate where it joined the county road.  He said he locked the gate and that only
family of the two owners and their invitees used the road.  The land the road passes over was sold by
Stinson and Robinson in separate tracts to the Morrises and the Boyds.  The Morrises and the Boyds continued to
maintain the road as it passed over their respective tracts.  Evidence at trial showed that fences
surrounding the road on all sides had been maintained since 1971.  

            Carpenter and Meyer inherited their land from their aunt,
Maurita Carpenter.[1]  Jesse Morris described the only time that he
had seen Meyer use the road, which was at a time when Maurita Carpenter still
owned the land.  He explained that, on
July 4, 1996, he had noticed Meyer and his wife, along with another couple,
when they drove up to the gate.  He
testified that Meyer told him he and the others wanted to walk to his aunt’s
tract.  Meyer said that it was easier for
them, particularly the ladies, to walk to his aunt’s land on the road rather
than enter from the northern side of the tract, where there was more
brush.  Morris said he then gave Meyer a
key to the gate and that the foursome walked down the road.  Meyer testified without detail that Morris
gave him a key and he thought that was in 1997. 
He thought Boyd might have given him a key sometime after 1998. 

            With regard to Carpenter’s use of the road, Morris sent
him the following letter:

 

November
8, 2001

 

                Edwin J. Carpenter

                10431 Robindale Dr.

                Dallas, Texas 75238-2228

                Mr. Carpenter:

                

You
were notified by telephone on or about May 18, 2000 to cease and desist
trespassing on my property (this includes the Private Road #5302 itself as well
as the land at the end of said road). 
Despite this notification, you have continued to enter and to attempt to
enter my private property on several occasions, including but not limited to
April 21, 2001 and November 3, 2001.  

I
simply cannot allow your continued trespass upon my property.  I insist that you immediately and permanently
cease and desist from entering and trespassing upon my property.  Should you make any further attempt to enter
my property, I will pursue all legal remedies available to me, including filing
formal charges against you for criminal trespass under Texas Penal Code § 30.05
for any past and future unlawful entries upon my property.

 

You
have no right of access to your property through mine; your right of access is
through other parcels of land which, along with yours, were included in the
Meyers/Bass family property from which yours was severed as a result of
inheritance and through which access to your property has been achieved for
perhaps the last 70 to 100 years.

 

                Sincerely,

 

 

                /s /

                Jesse Morris, Jr.

 

                Following the trial, the
trial court stated in findings of fact and conclusions of law that (1) the
roadway is not a public roadway, having been abandoned if it had ever been a
public roadway; (2) Meyer had acquired an easement by estoppel from Morris due
to furnishing him a key and not denying him permission to use the road; and (3)
Carpenter had not developed facts that would establish an easement by estoppel
in the roadway for him against Morris. 
The trial court entered judgment based on these findings of fact and
conclusions of law.  The trial court also
granted both Carpenter and Morris an easement over the roadway as it crossed
over the Boyds’ land.  

            Carpenter and Meyer then filed an appeal of the
judgment.  The Morrises followed with
their cross-appeal.  The Boyds did not
appeal the judgment and are not parties to this appeal.  

 

Standard of Review

            Findings of fact entered in a case tried to the court are
of the same force and dignity as a jury’s answer to jury questions.  Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991).  The
trial court’s findings of fact are reviewable for legal and factual sufficiency
of the evidence to support them by the same standards that are applied in
reviewing the legal or factual sufficiency of the evidence supporting a jury’s
answer to a jury question.  Id.  Conclusions of law will be upheld on appeal
if the judgment can be sustained on any legal theory supported by the evidence;
they will not be reversed unless they are erroneous as a matter of law.  Texas Dep’t of Pub. Safety v. Stockton,
53 S.W.3d 421, 423 (Tex. App.–San Antonio 2001, pet. denied).

            When a party attacks the legal sufficiency of an adverse
finding on an issue on which he has the burden of proof, he must demonstrate on
appeal that the evidence establishes, as a matter of law, all vital facts in
support of the issue.  Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  In reviewing a “matter of law” challenge, the
reviewing court must first examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary.  Id.  If there is no evidence to support the
finding, the reviewing court will then examine the entire record to determine
if the contrary proposition is established as a matter of law.  Id.  The issue should be sustained only if the
contrary proposition is conclusively established.  Id.

            When a party attacks the factual sufficiency of an
adverse finding on an issue on which he has the burden of proof, he must demonstrate
on appeal that the adverse finding is against the great weight and
preponderance of the evidence.  Id.
at 242.  The reviewing court must
consider and weigh all of the evidence and can set aside a verdict only if the
evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence that the verdict is clearly wrong and
unjust.  Id.

            If an appellant is attacking the legal sufficiency of an
adverse finding on an issue on which he did not have the burden of proof, the
appellant must demonstrate on appeal that there is no evidence to support the
adverse finding.  See Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983).  Evidence is legally insufficient when, among
other things, there is a complete absence of 
evidence of a vital fact.  See Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  The reviewing court views the evidence in the
light most favorable to the verdict, indulging every reasonable inference that
would support it.  City of Keller
v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  The reviewing court must credit evidence that
supports the verdict if a reasonable fact finder could and disregard contrary
evidence unless a reasonable fact finder could not.  Id. at 827. The fact finder is
the sole judge of the credibility of the witnesses and the weight to give their
testimony.  Id. at 819.

 

 

Abandonment of Public Road

            In their first issue, Carpenter and Meyer contend that
the trial court erred in failing to declare that the roadway is a public
road.  They argue that the disputed
roadway was dedicated to public use by implication due to the conduct of the
Morrises’ and the Boyds’ predecessors in title.

            In its first finding of fact, the trial court found that,
if the road was ever a public road, it had long since been abandoned.  In its first conclusion of law, the trial
court held that the road is not a public road.     In
support of their first issue, Carpenter and Meyer show us evidence in the
record that the road was used by the public prior to 1964.  However, a road subject to public use can be
abandoned.  See Lindner v. Hill,
691 S.W.2d 590, 952 (Tex. 1985). 
Abandonment of a public road can be either by statute or common
law.  See Rutledge v. Staner,
9 S.W.3d 469, 471 (Tex. App.–Tyler 1999, pet. denied).  

            The commissioners court of any county in Texas has the
authority to abandon a public road.  See
Tex. Transp. Code. Ann. § 251.051
(Vernon 1999).  The definition for “statutory
abandonment” is found in Section 251.057 of the Texas Transportation Code,
which states:

 

(a)
A county road is abandoned when its use has become so infrequent that one or
more adjoining property owners have enclosed the road with a fence continuously
for at least 20 years.  The abandoned
road may be reestablished as a public road only in the manner provided for
establishing a new road. 

 

Id. §
251.057(a).

            By 1964, the road had become impassable, and the Rains
County Commissioners Court had voted to stop maintaining the road.  This was done due to the request of eight
citizens, including C.B. Meyer.  Stinson
and Robinson reconstructed the road in 1971. 
Stinson testified that there was permanent fencing around the road when
it was reconstructed.  He also testified
that after he and Robinson erected the gate in 1971, the only individuals he
saw using the road were their family members and invitees.  Morris testified that he saw no one use the
road but the Morris or Boyd family members, except on July 4, 1996 when he gave
the key to the gate to Meyer.  Boyd
testified that he has seen only his and the Morris family members on the road
with the occasional exception of Meyer and Maurita Carpenter.  The record shows that the public’s use of the
road has become so infrequent that it has been fenced more than twenty years so
that it has been statutorily abandoned as a public road.  See id.

            A common law abandonment is made up of two elements: (1)
acts of relinquishment and (2) the intention to abandon.  Maples v. Henderson County, 259
S.W.2d 264, 267 (Tex. Civ. App.– Dallas 1953, writ ref’d n.r.e.).  Both elements must be shown by the parties
asserting the abandonment, though intention may be inferred from the conduct of
the parties.  Id.  The record in this case shows that the road
had been used by the county and perhaps the state to haul gravel from pits on
the 705 acre Meyer farm in the 1940s. 
However, by 1964, citizens, including C.B. Meyer, had determined that
the road had become impassable and that the county should discontinue
maintaining it.  The county commissioners
court effectuated this request by voting to discontinue service of the road on
May 9, 1964.  Stinson’s testimony
established that the roadway was grown over and in nonuse when he reconstructed
it in 1971 for use as a private drive by members of his and the Robinsons’
families.  Stinson’s testimony also
established that the roadway was fenced when he rebuilt it in 1971.  The only use of the roadway by anyone other
than family members of the road’s owners was the occasional and infrequent use
by members of the Meyer family.  The
testimony showed that members of the Meyer family had access to their tracts of
land by other means although the road made it easier for them to reach their
tracts.  The evidence supports both
statutory and common law abandonment of the road.  Carpenter and Meyer did not establish as a
matter of law that the road had not been abandoned.  See Francis, 46 S.W.3d at
241.  Further, the finding of abandonment
is not against the great weight and preponderance of the evidence.  See id. at 242.  Thus, even if the road had been a public road
at one time, it is not presently a public road. 
Therefore, the trial court did not err in failing to declare the road a
public road.  Carpenter and Meyer’s issue
one is overruled.  

Easement by Estoppel

            In their second issue, Carpenter and Meyer contend that
the trial court erred when it did not grant Carpenter an easement by estoppel
over the portion of the road that is on the Morrises’ land.  In two cross-issues, the Morrises contend
that the trial court erred when it granted an easement by estoppel over their
land to Meyer.  

            An easement confers upon one person the right to use the
land of another for a specific purpose.  Hubert
v. Davis, 170 S.W.3d 706, 710 (Tex. App.–Tyler 2005, no pet.).  An easement has been further defined as a “liberty,
privilege or advantage in land without profit, existing distinct from the
ownership of the soil.”  Id.  Easements consist of two characteristics
pertinent to our discussion: 1) an easement is a burden on one estate, the
servient estate, for the benefit of another, the dominant estate, and 2) an
easement is a nonpossessory interest in land that is not revocable at
will.  Id.

            Three elements are necessary to the creation of an
easement by estoppel: (1) a representation was communicated, either by word or
action, to the promissee; (2) the communication was believed; and (3) the
promissee relied on the communication.  Holden
v. Weidenfeller, 929 S.W.2d 124, 131 (Tex. App.–San Antonio 1996, writ
denied).  The exact nature and extent of
the doctrine of easement by estoppel have not been clearly defined.  Mack v. Landry, 22 S.W.3d 524,
528 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (op. on reh’g).  Acquiescing behavior by the owner of a
servient estate may be conduct that can create an easement by estoppel.  See Wallace v. McKinzie, 869
S.W.2d 592, 596 (Tex. App.–Amarillo 1993, writ denied).  Equitable estoppel in the context of an
easement arises when one is not permitted to disavow his conduct that induces
another to act detrimentally in reliance upon it.  See id. at 595. 

            The trial court found that there is no evidence that a
representation had been made to a predecessor in title to the property now
owned by Carpenter that could be the basis of an easement by estoppel.  In its additional findings, the trial court
found that no representation was made to Carpenter or to a predecessor in title
to his property that could be the basis of an easement by estoppel in favor of
Carpenter.  Further, the trial court
found that Morris affirmatively told Carpenter he did not give his permission
to use the road.  In its additional conclusion
of law, the trial court stated that Carpenter did not acquire an easement by
estoppel on the Morrises’ land.  

            Carpenter stated that Morris had never made any
representation to him about using the road. 
Therefore, the first element of easement by estoppel was not
present.  Nevertheless, Carpenter
contends that his aunt, Maurita Carpenter, had access to the road and that he
should continue to have access.  However,
there is nothing in the record to indicate that Morris had ever represented to
Maurita Carpenter that she could use the road over his land.  Carpenter has therefore failed to present any
evidence that a representation was made which showed that an easement by
estoppel was created by Morris.  Further,
even if a representation had been made to either Carpenter or his aunt, there
was no detrimental reliance shown by Carpenter, because no improvements were
ever made on his tract.  Carpenter has
not established as a matter of law any element of an easement by estoppel on
the Morrises’ land.  See Francis,
46 S.W.3d at 241; Holden, 929 S.W.2d at 131.  The conclusion that Carpenter did not acquire
an easement by estoppel in the Morrises’ land is not erroneous as a matter of
law.  Further, the fact findings
supporting that conclusion are not so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  See Francis, 46 S.W.3d at
242.  Carpenter and Meyer’s second issue
is overruled.

            The trial court found that Jesse Morris gave Meyer a key
to locked gates in 1997 or 1998 and has not denied permission to Meyer to use
the road on his property.  The trial
court concluded that Meyer acquired an easement by estoppel from Morris’s
conduct.

            The only evidence in the record regarding any
representation made by Morris to Meyer regarding use of the roadway at issue is
testimony that Morris gave Meyer a key to the gate. Morris’s testimony
described the incident that he said occurred on July 4, 1996.  On that day, Meyer represented to Morris that
he was taking his wife and another couple for a walk on his Aunt Maurita’s
land.  Meyer told Morris that it would be
much easier if they could walk on the road instead of entering from the north
side, which had heavier vegetation. 
Morris told Meyer that he did not mind their walking on the road and
gave him a key to the gate that blocked the road.  Meyer testified that Morris gave him a key to
the gate.  He thought it was in 1997, but
did not elaborate on the details of the incident.  

            Meyer produced no evidence establishing that he had made
any improvements to the adjoining tract after Morris gave him the key to the
gate.  Indeed, the land did not yet
belong to Meyer.  Thus, the third element
of detrimental reliance necessary to establish an easement by estoppel was not
shown.  See Holden, 929
S.W.2d at 131.

            Further, there is a basic flaw in the reasoning that this
incident created an easement.  Whether
the year was 1996 as testified to by Morris, or 1997 as testified to by Meyer,
Meyer only asked Morris for permission to go onto his aunt’s land, rather than
his own land.  The only representation
made by Morris to Meyer involving the use of the roadway over Morris’s land was
that he could walk on Maurita Carpenter’s land on that day.  Meyer’s land was not involved.  As stated earlier, a basic characteristic of
an easement is that it is a burden on one estate of land for the benefit of
another estate of land.  Morris’s act of
giving Meyer a key could not result in accrual of a benefit in Maurita
Carpenter’s land.

            Morris’s act of furnishing the key to Meyer is more in
the nature of giving a license in real estate rather than creating an
easement.  A license merely confers a
privilege to do some act or acts upon the land without conveying any interest
in or title to the land itself.  Samuelson
v. Alvarado, 847 S.W.2d 319, 323 (Tex. App.–El Paso 1993, no
pet.).  A license in real estate is
revocable at will.  Drye v. Eagle
Rock Ranch, Inc., 364 S.W.2d 196, 203 (Tex. 1962) .  Morris and Boyd could have changed the locks
on the gate at any time.  Morris had made
no representation to Meyer that would have required him to give Meyer a new key
to the gate.  There is no evidence to
establish the elements of an easement by estoppel in favor of Meyer against the
Morrises.  See Havner, 953
S.W.2d at 711; Holden, 929 S.W.2d at 131.  The trial court’s conclusion that Meyer
acquired an easement by estoppel from Morris’s conduct is erroneous as a matter
of law.  See Stockton, 53
S.W.3d at 423.  The Morrises’ first
cross-issue is sustained.  We need not
address their second cross-issue.  See
Tex. R. App. P. 47.1.

Conclusion

            Having overruled the two issues of Carpenter and Meyer
and sustained the Morrises’ first cross-issue, the judgment granting the
nonexclusive easement by estoppel for Meyer against the Morrises is reversed
and a take nothing judgment is rendered for the Morrises against Meyer for all
relief requested. The remainder of the judgment is affirmed.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

 

Opinion
delivered July 19, 2006.

Panel
consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

(PUBLISH)











[1] Although Maurita
Carpenter died in 1998, the deeds to Edwin J. Carpenter and John Lawson Meyer
were filed for record on March 2, 2000.