OPINION HEADING PER CUR 









                                NO. 12-05-00210-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

            

 

EDWIN J. CARPENTER AND

JOHN LAWSON MEYER, §          APPEAL FROM THE
354TH

APPELLANTS AND 

CROSS-APPELLEES

            

V.        §          JUDICIAL DISTRICT COURT OF

 

JESSE MORRIS, JR. AND

REBECCA MORRIS,          §          RAINS
COUNTY, TEXAS

APPELLEES AND 

CROSS-APPELLANTS




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Edwin J. Carpenter and John Lawson
Meyer have filed a motion for rehearing, which is denied.  However, we withdraw our opinion of July 19,
2006 and substitute the following opinion in its place.  

            This appeal arises out of a dispute
between adjoining land owners over the use of Private Road 5302 (the “road”) in
Rains County.  Carpenter and Meyer
complain, in two issues, that the trial court erred in failing to declare that
the road is a public road and in failing to find that Carpenter has an easement
by estoppel over the road where it crosses the land of Jesse and Rebecca
Morris.  The Morrises, by cross-appeal,
contend that the trial court erred when it determined Meyer has an easement by
estoppel over the road as it crosses their land.  We reverse the trial court’s judgment in
part, render a take nothing judgment for the Morrises against Meyer, and affirm
the remainder of the judgment.  

                                    Background








            On January 21, 2003, Carpenter and
Meyer filed a suit for declaratory judgment against the Morrises and Jessie and
Lenora Boyd seeking to have the road declared a public road or, in the
alternative, asserting easement rights in the road.  A bench trial followed.  The evidence showed that the road’s history
dates back to the 1940s.  During the
1940s and 1950s, R.L. Meyer owned acreage in Rains County that had access to
C.R. 1300 (the “county road”) by the road and one located to the north of
it.  James Arnold and Annie Johnson
testified at trial that the road at issue before us had been used by the public
in the 1940s and 1950s.  The record was
silent as to this road in the 1960s until Paul Stinson testified to its nonuse
when he and his brother-in-law Leland Robinson purchased the land over which it
ran in 1968.  

            Stinson testified that the road was
covered with vegetation and could not be driven over in a vehicle when they
bought the property.  Stinson said that
he used equipment from his construction business to clean up the road in 1971
and make it passable.  He placed gravel
on the road and put up a metal gate where it joined the county road.  He said he locked the gate and that only
family of the two owners and their invitees used the road.  The land the road passes over was sold by
Stinson and Robinson in separate tracts to the Morrises and the Boyds.  The Morrises and the Boyds continued to
maintain the road as it passed over their respective tracts.  Evidence at trial showed that fences
surrounding the road on all sides had been maintained since 1971.  

            Carpenter and Meyer inherited their
land from Maurita Carpenter in 2000.[1] Jesse Morris
described the only time that he had seen Meyer use the road, which was at a
time when Maurita Carpenter still owned the land.  He explained that, on July 4, 1996, he had
noticed Meyer and his wife, along with another couple, when they drove up to
the gate.  He testified that Meyer told
him he and the others wanted to walk to his aunt’s tract.  Meyer said that it was easier for them,
particularly the ladies, to walk to his aunt’s land on the road rather than
enter from the northern side of the tract, where there was more brush.  Morris said he then gave Meyer a key to the
gate and that the foursome walked down the road.  Meyer testified without detail that Morris
gave him a key and he thought that was in 1997. 
He thought Boyd might have given him a key sometime after 1998. 

            With regard to Carpenter’s use of
the road, Morris sent him the following letter:

November 8, 2001

 

            Edwin J.
Carpenter

            10431 Robindale
Dr.

            Dallas, Texas
75238-2228

 

            Mr. Carpenter:

            You
were notified by telephone on or about May 18, 2000 to cease and desist
trespassing on my property (this includes the Private Road #5302 itself as well
as the land at the end of said road). 
Despite this notification, you have continued to enter and to attempt to
enter my private property on several occasions, including but not limited to
April 21, 2001 and November 3, 2001.  

 

I simply cannot allow your continued trespass
upon my property.  I insist that you
immediately and permanently cease and desist from entering and trespassing upon
my property.  Should you make any further
attempt to enter my property, I will pursue all legal remedies available to me,
including filing formal charges against you for criminal trespass under Texas
Penal Code § 30.05 for any past and future unlawful entries upon my
property.

 

You have no right of access to your property
through mine; your right of access is through other parcels of land which,
along with yours, were included in the Meyers/Bass family property from which
yours was severed as a result of inheritance and through which access to your
property has been achieved for perhaps the last 70 to 100 years.

 

            Sincerely,

 

 

            /s /

            Jesse Morris, Jr.

 

            Following the trial, the trial court stated in findings of fact
and conclusions of law that (1) the road is not a public road, having been
abandoned if it had ever been a public road; (2) Meyer had acquired an easement
by estoppel from Morris due to furnishing him a key and not denying him
permission to use the road; and (3) Carpenter had not developed facts that
would establish an easement by estoppel in the road for him against
Morris.  The trial court entered judgment
based on these findings of fact and conclusions of law.  The trial court also granted both Carpenter
and Morris an easement over the road as it crossed over the Boyds’ land.  

            Carpenter and Meyer then filed an
appeal of the judgment.  The Morrises
followed with their cross-appeal.  The
Boyds did not appeal the judgment and are not parties to this appeal.  

 

Standard of Review

            Findings of fact entered in a case
tried to the court are of the same force and dignity as a jury’s answer to jury
questions.  Anderson v. City of
Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are
reviewable for legal and factual sufficiency of the evidence to support them by
the same standards that are applied in reviewing the legal or factual
sufficiency of the evidence supporting a jury’s answer to a jury question.  Id.  Conclusions of law will be upheld on appeal
if the judgment can be sustained on any legal theory supported by the evidence;
they will not be reversed unless they are erroneous as a matter of law.  Texas Dep’t of Pub. Safety v. Stockton,
53 S.W.3d 421, 423 (Tex. App.–San Antonio 2001, pet. denied).

            When a party attacks the legal
sufficiency of an adverse finding on an issue on which he has the burden of
proof, he must demonstrate on appeal that the evidence establishes, as a matter
of law, all vital facts in support of the issue.  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  In
reviewing a “matter of law” challenge, the reviewing court must first examine
the record for evidence that supports the finding, while ignoring all evidence
to the contrary.  Id.  If there is no evidence to support the
finding, the reviewing court will then examine the entire record to determine
if the contrary proposition is established as a matter of law.  Id.  The issue should be sustained only if the
contrary proposition is conclusively established.  Id.

            When a party attacks the factual
sufficiency of an adverse finding on an issue on which he has the burden of
proof, he must demonstrate on appeal that the adverse finding is against the
great weight and preponderance of the evidence. 
Id. at 242.  The
reviewing court must consider and weigh all of the evidence and can set aside a
verdict only if the evidence is so weak or if the finding is so against the
great weight and preponderance of the evidence that the verdict is clearly
wrong and unjust.  Id.

            If an appellant is attacking the
legal sufficiency of an adverse finding on an issue on which he did not have
the burden of proof, the appellant must demonstrate on appeal that there is no
evidence to support the adverse finding. 
See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983).  Evidence is legally insufficient
when, among other things, there is a complete absence of  evidence of a vital fact.  See Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  The
reviewing court views the evidence in the light most favorable to the verdict,
indulging every reasonable inference that would support it.  City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex. 2005).  The
reviewing court must credit evidence that supports the verdict if a reasonable
fact finder could and disregard contrary evidence unless a reasonable fact
finder could not.  Id. at
827. The fact finder is the sole judge of the credibility of the witnesses and
the weight to give their testimony.  Id.
at 819.

            Abandonment of Public Road

            In their first issue, Carpenter and
Meyer contend that the trial court erred in failing to declare that the road is
a public road.  They argue that the
disputed road was dedicated to public use by implication due to the conduct of
the Morrises’ and the Boyds’ predecessors in title.

            In its first finding of fact, the
trial court found that, if the road was ever a public road, it had long since
been abandoned.  In its first conclusion
of law, the trial court held that the road is not a public road.   In support of their first issue, Carpenter and
Meyer show us evidence in the record that the road was used by the public prior
to 1960.  However, a road subject to public
use can be abandoned.  See Lindner
v. Hill, 691 S.W.2d 590, 952 (Tex. 1985).  Abandonment of a public road can be either by
statute or common law.  See Rutledge
v. Staner, 9 S.W.3d 469, 471 (Tex. App.–Tyler 1999, pet. denied).  

            A common law abandonment is made up
of two elements: (1) acts of relinquishment and (2) the intention to
abandon.  Maples v. Henderson
County, 259 S.W.2d 264, 267 (Tex. Civ. App.– Dallas 1953, writ ref’d
n.r.e.).  Both elements must be shown by
the parties asserting the abandonment, though intention may be inferred from
the conduct of the parties. Id. 
Stinson’s testimony established that the road was grown over and in
nonuse when he reconstructed it in 1971 for use as a private drive by members
of his and the Robinsons’ families. 
Stinson’s testimony also established that the road was fenced when he
rebuilt it in 1971.  The only use of the
road by anyone other than family members of the road’s owners was the
occasional and infrequent use by members of the Meyer family.  The testimony showed that members of the
Meyer family had access to their tracts of land by other means.[2]  The evidence supports a
common law abandonment of the road. 
Carpenter and Meyer did not establish as a matter of law that the road
had not been abandoned.  See Francis,
46 S.W.3d at 241.  Further, the finding
of abandonment is not against the great weight and preponderance of the
evidence.  See id. at
242.  Thus, even if the road had been a
public road at one time, it is not presently a public road.  Therefore, the trial court did not err in
failing to declare the road a public road. 
Carpenter and Meyer’s issue one is overruled.  

Easement by Estoppel

            In their second issue, Carpenter and
Meyer contend that the trial court erred when it did not grant Carpenter an
easement by estoppel over the portion of the road that is on the Morrises’
land.  In two cross-issues, the Morrises
contend that the trial court erred when it granted an easement by estoppel over
their land to Meyer.  

            An easement confers upon one person
the right to use the land of another for a specific purpose.  Hubert v. Davis, 170 S.W.3d
706, 710 (Tex. App.–Tyler 2005, no pet.). 
An easement has been further defined as a “liberty, privilege or
advantage in land without profit, existing distinct from the ownership of the
soil.”  Id.  Easements consist of two characteristics
pertinent to our discussion: 1) an easement is a burden on one estate, the
servient estate, for the benefit of another, the dominant estate, and 2) an
easement is a nonpossessory interest in land that is not revocable at
will.  Id.

            Three elements are necessary to the
creation of an easement by estoppel: (1) a representation was communicated,
either by word or action, to the promissee; (2) the communication was believed;
and (3) the promissee relied on the communication.  Holden v. Weidenfeller, 929
S.W.2d 124, 131 (Tex. App.–San Antonio 1996, writ denied).  The exact nature and extent of the doctrine
of easement by estoppel have not been clearly defined.  Mack v. Landry, 22 S.W.3d 524,
528 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (op. on reh’g).  Acquiescing behavior by the owner of a
servient estate may be conduct that can create an easement by estoppel.  See Wallace v. McKinzie, 869
S.W.2d 592, 596 (Tex. App.–Amarillo 1993, writ denied).  Equitable estoppel in the context of an
easement arises when one is not permitted to disavow his conduct that induces
another to act detrimentally in reliance upon it.  See id. at 595. 

            The trial court found that there is
no evidence that a representation had been made to a predecessor in title to
the property now owned by Carpenter that could be the basis of an easement by estoppel.  In its additional findings, the trial court
found that no representation was made to Carpenter or to a predecessor in title
to his property that could be the basis of an easement by estoppel in favor of
Carpenter.  Further, the trial court
found that Morris affirmatively told Carpenter he did not give his permission
to use the road.  In its additional
conclusion of law, the trial court stated that Carpenter did not acquire an
easement by estoppel on the Morrises’ land. 


            Carpenter stated that Morris had
never made any representation to him about using the road.  Therefore, the first element of easement by
estoppel was not present.  Nevertheless,
Carpenter contends that his aunt, Maurita Carpenter, had access to the road and
that he should continue to have access. 
However, there is nothing in the record to indicate that Morris had ever
represented to Maurita Carpenter that she could use the road over his
land.  Carpenter has therefore failed to
present any evidence that a representation was made which showed that an
easement by estoppel was created by Morris. 
Further, even if a representation had been made to either Carpenter or
his aunt, there was no detrimental reliance shown by Carpenter, because no
improvements were ever made on his tract. 
Carpenter has not established as a matter of law any element of an
easement by estoppel on the Morrises’ land. 
See Francis, 46 S.W.3d at 241; Holden, 929
S.W.2d at 131.  The conclusion that
Carpenter did not acquire an easement by estoppel in the Morrises’ land is not
erroneous as a matter of law.  Further,
the fact findings supporting that conclusion are not so against the great
weight and preponderance of the evidence as to be clearly wrong and unjust.  See Francis, 46 S.W.3d at
242.  Carpenter and Meyer’s second issue
is overruled.

            The trial court found that Jesse
Morris gave Meyer a key to locked gates in 1997 or 1998 and has not denied
permission to Meyer to use the road on his property.  The trial court concluded that Meyer acquired
an easement by estoppel from Morris’s conduct.

            The only evidence in the record
regarding any representation made by Morris to Meyer regarding use of the road
at issue is testimony that Morris gave Meyer a key to the gate. Morris’s
testimony described the incident that he said occurred on July 4, 1996.  On that day, Meyer represented to Morris that
he was taking his wife and another couple for a walk on his Aunt Maurita’s
land.  Meyer told Morris that it would be
much easier if they could walk on the road instead of entering from the north
side, which had heavier vegetation. 
Morris told Meyer that he did not mind their walking on the road and
gave him a key to the gate that blocked the road.  Meyer testified that Morris gave him a key to
the gate.  He thought it was in 1997, but
did not elaborate on the details of the incident.  

            Meyer produced no evidence
establishing that he had made any improvements to the adjoining tract after
Morris gave him the key to the gate. 
Indeed, the land did not yet belong to Meyer.  Thus, the third element of detrimental
reliance necessary to establish an easement by estoppel was not shown.  See Holden, 929 S.W.2d at 131.

            Further, there is a basic flaw in
the reasoning that this incident created an easement.  Whether the year was 1996 as testified to by
Morris, or 1997 as testified to by Meyer, Meyer only asked Morris for
permission to go onto his aunt’s land, rather than his own land.  The only representation made by Morris to
Meyer involving the use of the road over Morris’s land was that he could walk
on Maurita Carpenter’s land on that day. 
Meyer’s land was not involved.  As
stated earlier, a basic characteristic of an easement is that it is a burden on
one estate of land for the benefit of another estate of land.  Morris’s act of giving Meyer a key could not
result in accrual of a benefit in Maurita Carpenter’s land.

            Morris’s act of furnishing the key
to Meyer is more in the nature of giving a license in real estate rather than
creating an easement.  A license merely
confers a privilege to do some act or acts upon the land without conveying any
interest in or title to the land itself. 
Samuelson v. Alvarado, 847 S.W.2d 319, 323 (Tex. App.–El
Paso 1993, no pet.).  A license in real
estate is revocable at will.  Drye
v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 203 (Tex. 1962) .  Morris and Boyd could have changed the locks
on the gate at any time.  Morris had made
no representation to Meyer that would have required him to give Meyer a new key
to the gate.  There is no evidence to
establish the elements of an easement by estoppel in favor of Meyer against the
Morrises.  See Havner, 953
S.W.2d at 711; Holden, 929 S.W.2d at 131.  The trial court’s conclusion that Meyer
acquired an easement by estoppel from Morris’s conduct is erroneous as a matter
of law.  See Stockton, 53
S.W.3d at 423.  The Morrises’ first
cross-issue is sustained.  We need not
address their second cross-issue.  See
Tex. R. App. P. 47.1.

Conclusion

            Having overruled the two issues of
Carpenter and Meyer and sustained the Morrises’ first cross-issue, the judgment
granting the nonexclusive easement by estoppel for Meyer against the Morrises
is reversed and a take nothing judgment is rendered for the Morrises against
Meyer for all relief requested. The remainder of the judgment is affirmed.

                                                            

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

Opinion delivered August 31, 2006.

Panel consisted of Worthen, C.J. and Griffith, J.

Hoyle, J., not participating.

 

 

 

 

(PUBLISH)

 

                                                











[1] In 1961 R.L. Meyer deeded
part of his land to his daughter, Maurita Carpenter.





[2] The testimony from Carpenter and Meyer
was that the road made it easier for them to reach their respective tracts.