ACCEPTED
04-15-00272-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/10/2015 9:50:51 AM
KEITH HOTTLE
CLERK

No. 04-15-00272-CV

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

11/10/2015 9:50:51 AM

KEITH E. HOTTLE
Clerk

KYU IM ROBINSON,

APPELLANT,

V.

JESS L. MAYFIELD, TRUSTEE, ET AL.,

APPELLEES.

ON APPEAL FROM THE 131ST JUDICIAL DISTRICT COURT
BEXAR COUNTY, TEXAS
HON. RENEE A. YANTA, PRESIDING JUDGE
TRIAL COURT CAUSE NO. 2013-CI-07766

APPELLANT'S REPLY BRIEF

JoAnn Storey
State Bar No. 19315300
JOANN STOREY, P.C.
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713/529-0048
Telecopier: 713/529-2498
storeyj@heightslaw.com

*Counsel for appellant,*
*Kyu Im Robinson*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     Riddick misrepresents the record.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Riddick misrepresents Robinson's briefing... . . . . . . . . . . . . . . . . . . . . . 7

III.   *Holden* and the other cases Riddick cites are distinguishable... . . . . . . . . . 10

IV.   Notice of use and notice of an easement are two different things... . . . . . . . 15

V.    This Court has rejected the *Scott* exception... . . . . . . . . . . . . . . . . . . . . 16

Conclusion and Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# INDEX OF AUTHORITIES

**Cases**                                                                             **Page**

*Allen v. Allen*,
280 S.W.3d 366 (Tex.App.–Amarillo 2008, pet. denied). . . . . . . . . . . . . . 18

*Callan v. Walters*,
190 S.W. 829 (Tex.Civ.App.–Austin 1916, no writ). . . . . . . . . . . . . . . . . 15

*Holden v. Weidenfeller*,
929 S.W.2d 124 (Tex.App.–San Antonio
1996, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 15, 16

*In re CMH Homes, Inc.*,
No. 04-13-00050-CV, 2013 WL 2446724
(Tex.App.–San Antonio 2013, orig. proceeding). . . . . . . . . . . . . . . . . . . . 2

*Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*,
750 S.W.2d 868 (Tex. App.–Austin 1988, writ denied). . . . . . . . . . . . . . . 15

*Mack v. Landry*,
22 S.W.3d 524 (Tex.App.–Houston [14th Dist.] 2000, no pet.). . . . . . . . . . 17

*Montange v. Hagelstein*,
No. 10-05-00291-CV, 2006 WL 648115
(Tex.App.–Waco 2006, pet. denied)
(mem. op.) (Gray, C.J., dissenting). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*North Clear Lake Development Corp. v. Blackstock*,
450 S.W.2d 678 (Tex.Civ.App.–Houston
[14th Dist.] 1970, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*RDG Partnership v. Long*,
350 S.W.3d 262 (Tex.App.–San Antonio 2011, no pet.). . . . . . . . . . . . . . . 17

*Rinn v. Wennenweser*,
    No. 01-07-00763-CV, 2008 WL 2611921
    (Tex.App.–Houston [1st Dist.] 2008, no pet.) (mem. op.). . . . . . . . . . . . . . 18

*Russell v. Rawls*,
    No. 08-00-00546-CV, 2003 WL 1361534
    (Tex.App.–El Paso 2003, no pet.) (mem. op.). . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Reid*,
    No. 04-13-00550-CV, 2015 WL 3895465
    (Tex. App.–San Antonio 2015, pet. filed) (mem. op.). . . . . . . . . . . . . . . . . 9

*Storms v. Tuck*,
    579 S.W.2d 447 (Tex.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Suarez v. City of Texas City*,
    465 S.W.3d 623 (Tex.2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Thompson v. Houk*,
    No. 12-04-00315-CV, 2005 WL 2035831
    (Tex.App.–Tyler 2005, no pet.) (mem. op.). . . . . . . . . . . . . . . . . . . . . 12, 13

*Wallace v. McKinzie*,
    869 S.W.2d 592 (Tex.App.–Amarillo 1993, writ denied). . . . . . . . . . . . . . 12

No. 04-15-00272-CV

In The Fourth Court of Appeals
San Antonio , Texas

Kyu Im Robinson,

Appellants,

v.

Jess L. Mayfield, Trustee, et al.,

Appellees.

TO THE HONORABLE COURT OF APPEALS:

Appellant, Kyu Im Robinson (Robinson or appellant), files this brief in reply to Appellee's Brief filed by William P. Riddick, Individually and as Trustee of the Wm P. Riddick – 76 Trusts (Riddick or appellee).

## I.    Riddick misrepresents the record.

Robinson objects to the following misrepresentations of the record in Riddick's brief.

1.    <u>Misrepresentation</u>: The Roadway was constructed sometime before January 1954.  RIDDICK BR. at p. 3 (citing DX9).

<u>Record</u>: DX9 is a Warranty Deed executed by Walter G. Laguerquist, Jr. conveying Riddick's property to Riddick and his brother, Thomas R. Riddick.  DX9.

The deed does not mention any roadway, nor does the deed purport to reflect any condition of the property ***before*** the date of its execution on January 31, 1977.

2.      Misrepresentation: At the time the Roadway was built, the Steves Brothers still owned the property on both sides of the Roadway. RIDDICK BR. at p. 3 (citing DX1).

Record: DX1 consists of plats dated in 1966. DX1. They do not reflect the roadway, much less the date the roadway was built.

3.      Misrepresentation: By 1954 there was already a structure built on the north side of the Roadway, as indicated in the below aerial photograph taken on January 16, 1954, with the Roadway highlighted. RIDDICK BR. at p. 3 (citing CR33, DX9).

Record: No "aerial photograph taken on January 16, 1954, with the Roadway highlighted" was ever introduced into evidence at trial. CR33 is Riddick's pleading. It is not evidence. *See In re CMH Homes, Inc.*, No. 04-13-00050-CV, 2013 WL 2446724, at *9 (Tex.App.–San Antonio 2013, orig. proceeding) (citing *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995)). The Warranty Deed, DX9, does not include, or reference, any aerial photograph, nor does it show a "highlighted roadway."

4. <u>Misrepresentation:</u> Prior to purchasing the Riddick Property, architectural and engineering drawings were created, evidencing Mr. Lifshutz's plans for the Riddick Property. RIDDICK BR. at p. 6 (citing DX28A, B, C; 3RR58, 59, 61-63).

<u>Record</u>: The record conclusively establishes the opposite of Riddick's assertion. As Riddick's own counsel conceded: "We don't know who actually designed those drawings. Everybody is dead. Mr. Bernard Lifshutz is dead. Mr. Albert Steves is dead." 2RR45.

5. <u>Misrepresentation:</u> The Apartments and associated carport parking structures were constructed in clear reliance on, and contemplation of, the continued use of the Roadway. RIDDICK BR. at p. 6 (citing 3RR26-27).

<u>Record:</u> The record cite is to Riddick's statements made on voir dire to establish Riddick's expertise on real estate issues. 3RR23-27. Nothing in the cited pages reflect that whoever built the Apartments relied on or contemplated continued use of the Roadway.

6. <u>Misrepresentation:</u> Other aspects of the Apartments - - stairs, hot water boilers, electrical infrastructure - - were designed so as to make continuous use of the Roadway necessary. RIDDICK BR. at p. 7 (citing 3RR48-49).

Record: The cited portion of the record is Riddick's testimony concerning a video of the premises. Nothing in the cited part of the record, or anywhere else in the record, reflects that the stairs, hot water boilers, and electrical infrastructure were part of a "design" that contemplated continuous use of the roadway. The current condition of the premises is not relevant to any issue in the case.

7. Misrepresentation: The Apartments as designed clearly envisioned and necessitated the use of the Roadway by the Apartments' owners and its tenants. RIDDICK BR. at p. 7 (citing CTX1 and 3RR26-27).

Record: CTX1 is Dr. Lifshutz's deposition testimony; 3RR26-27 is the voir dire of Riddick. The cited portions of the record do not show what the design of the apartments envisioned or necessitated. To the contrary, Dr. Lifshutz's first memory of the roadway was *after* all the hoopla of the construction of the apartments was over. CTX1(p.13).

8. Misrepresentation: The covered parking spots are required for code compliance for operation as an apartment complex. RIDDICK BR. at p. 7 (citing 3RR26-27, 30).

Record: The cited portions of the record do not indicate that such "code compliance" was in effect and relied upon at the time the apartments were designed

or constructed. Whatever "code compliance" is now required is not relevant to any issue in this case.

9.    Misrepresentation: The original developer of the Riddick Property actually built the Apartments and permanent parking structures in a way that required use of the Roadway. RIDDICK BR. at p. 24.

Record: The record conclusively establishes the opposite of Riddick's assertion. As Riddick's own counsel conceded: "We don't know who actually designed those drawings. Everybody is dead. Mr. Bernard Lifshutz is dead. Mr. Albert Steves is dead." 2RR45.

10.    Misrepresentation: Lifshutz believed and relied on the Steves Brothers' representations when they failed to halt or preclude the construction of the Apartments. RIDDICK BR. at p. 24 (citing DX28A, B, C).

Record: The drawings depicted in DX28A, B, and C do not contain any representations by silence or acquiescence by the Steves Brothers.

11.    Misrepresentation: Photographs in the record clearly show that the Roadway existed before the Apartments were constructed. RIDDICK BR. at p. 33 (citing PX10B; DX26A, B; DX27; CR33).

Record: CR33 is Riddick's pleading. It is not evidence. PX10B is not dated and, thus, is no evidence that the roadway existed before the apartments were

constructed. DX26A and DX26B are not dated and, thus, are no evidence the roadway existed before the apartments were constructed.[1] DX27 is not dated and, thus, is no evidence the roadway existed before the apartments were constructed. Indeed, Dr. Lifshutz testified that DX27 correctly depicts where the Regency House Apartments are located. CTX1(p.33). That testimony is contrary to the notion that "the Roadway existed before the Apartments were constructed."

12. Misrepresentation: Every owner of the Apartments since construction has relied on a right to use of the Roadway. RIDDICK BR. at p. 36 (citing 3RR26-27).

Record: The record cite consists of Riddick's statements on voir dire about code compliance and the effect on the value of his property if he does not have use of the roadway. 3RR26-27. There is nothing in that exchange about what his predecessors relied on "since construction" of the roadway. The testimony in the cited pages of the record is "so weak as to do no more than create a mere surmise or suspicion of" the existence of reliance and, thus, "is no evidence." *Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex.2015) (quoting *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 & n.3 (Tex.1993)).

---

[1] As Robinson pointed out in her opening brief, the court reporter's reference in her index to photos dated 1/16/54 is not supported by the photos themselves. ROBINSON BR. at p. 16, n.2.

## II.  Riddick misrepresents Robinson's briefing.

Riddick claims Robinson mischaracterizes the applicable legal standards and the evidence and "misses the point" of the law.  RIDDICK BR. at p. 37.  Riddick is referring to Robinson's argument that there is no evidence that Steves or his independent executrix - - predecessors to Robinson, the ***servient-estate owner*** - - induced Riddick's acceptance of the grant of his property.  ROBINSON BR. at p. 28.

Riddick says that the law does not require reliance on representations made by the predecessor to the owner of the ***dominant*** estate.  RIDDICK BR. at p. 37.  But, Robinson never claimed that Steves or his independent executrix were predecessors in title to Riddick (the owner of the ***dominant*** estate).  Rather, as she clearly pointed out, the Robinson property (which is the ***servient*** estate) was owned either by Steves or by his independent executrix when Riddick purchased his property and that there is no evidence that "either of those persons induced Riddick's acceptance of the grant."  ROBINSON BR. at p. 28.  It ***is*** the law that an easement by estoppel may be based on representations by the owner of the servient estate to the owner of the dominant estate and Robinson cited that law in her argument.  *Id.* (citing *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 872 (Tex.App.–Austin 1988, pet. denied)).

In short, it is Riddick who has missed the point or has created a classic straw-man argument.

Riddick also says that Robinson's argument, that use of the roadway was permissive, is disingenuous. RIDDICK BR. at p. 38. According to Riddick, Robinson's argument is disingenuous because there is no evidence that the use of the roadway was ever permissive and, "in fact there is evidence of the opposite." *Id.* Riddick's contention ignores - - and, hence, does not address - - Robinson's **legal** argument that the law presumes that use is by permission based on **undisputed evidence** of joint use of the roadway. *See* ROBINSON BR. at pp. 23, 31, 33, 37, 38, 40, 41 (citing *Callan v. Walters*, 190 S.W. 829, 831-32 (Tex.Civ.App.–Austin 1916, no writ)).

Riddick further claims Robinson mischaracterizes the state of the law regarding the requirement of a vendor/vendee relationship to impose a duty. RIDDICK BR. at p. 39. According to Riddick, this Court has not required a vendor/vendee relationship in recognizing easements by estoppel. *Id.* (citing *Holden v. Weidenfeller*, 929 S.W.2d 124 (Tex.App.–San Antonio 1996, writ denied)). Riddick ignores the following precedent from this Court and, thus, misstates Robinson's briefing:

An easement by estoppel may not be predicated upon silence and passive acquiescence alone.

In the absence of a vendor/vendee relationship, there was no duty on the Reids [servient estate owner] to caution or warn Smith or his predecessors-in-title that they should make no improvements upon their property without a secure right of ingress and egress appurtenant to their land.

*Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *7 (Tex. App.–San Antonio 2015, pet. filed) (mem. op.) (citations and internal quotations omitted). Robinson cited this Court's opinion in *Smith* in support of her argument that there was no duty in the absence of a vendor/vendee relationship. ROBINSON BR. at pp. 34, 39, 42.

Riddick accuses Robinson of "ignoring precedent like *Holden* that clearly supports the trial court's judgment." RIDDICK BR. at p. 40. Riddick overlooks Robinson's discussion of *Holden* - - and how it applies to this case - - on pages 13, 19-20, 21, and 22 of her brief. Riddick's accusation is unfounded. More importantly, the compelling facts supporting this Court's holding in *Holden* are missing in this case.

Finally, Riddick asserts that Robinson does not cite any authority supporting her argument that recovery of attorney's fees in easement cases under the TDJA is limited to those instances involving the construction of a written agreement. RIDDICK BR. at p. 48. Riddick's statement is a complete falsehood. Robinson cites three cases

in support of her argument - - including two cases from this Court - - with parenthetical explanations. ROBINSON BR. at pp. 52-53 (citing *Smith v. Reid* and *Herring v. Bocquet* from this Court and *Roberson v. City of Austin* from the Austin Court of Appeals).

### III. *Holden* **and the other cases Riddick cites are distinguishable.**

Riddick argues that *Holden*'s facts make its holding dispositive in this case. RIDDICK BR. at p. 28. But, the doctrine of easement by estoppel depends on the unique facts of each case. *Holden*, 929 S.W.2d at 131. Even Riddick recognizes this maxim: Easements by estoppel are "addressed on a case-by-case basis" and "are fact specific." RIDDICK BR. at p. 32. In any event, the table below demonstrates that the facts that compelled the conclusion in *Holden* are absent here.

| *Holden v. Weidenfeller* | *Robinson v. Riddick* |
|---|---|
| Deed of property to claimant's predecessor referenced the road in question, 929 S.W.2d at 131 | No reference to roadway in question in any deed |
| Claimant's property is landlocked without the use of the road in question, *id.* | Riddick's property is not landlocked, DX6, 2RR86 |
| The roadway was the only means of ingress and egress between a public road and the claimant's property, *id.* at 127 | Riddick's property is accessible by three public roads: Burr Road, Raphail Drive, and Harry Wurzbach Road (formerly Military Highway), DX6; 2RR86. |

| *Holden v. Weidenfeller* | *Robinson v. Riddick* |
|---|---|
| Claimant's predecessors testified that:<br><br>● the property was purchased *with the understanding that the road was the means of access*, and<br><br>● the property was purchased because they believed, based on the previous use of the road, they had a right to access their property via the old road<br><br>*Id.* at 131 | None of Riddick's predecessors - - Albert Steves, III, B. Lee Lifshutz, Skylark Investment Company, or Walter G. Laguerquist, Jr., DX3, DX5, DX7, DX9 - - testified at trial |
| The owners of the servient estate *encouraged* the claimants' belief they had a right to cross the owner's property to access their own property by allowing the claimants to put their own lock on a gate on the roadway to gain access to their property, *id.* at 131-32 | No evidence Kim took any action that encouraged Riddick's belief he had a right to use the roadway to access the parking spaces |
| The owners of the servient estate *built a new roadway* on their land to allow the claimants an alternative access to their land, *id.* at 132 | No evidence Robinson took any action that "indicated her knowledge" of Riddick's right to cross Robinson's land to access the parking spaces |
| The owners of the servient estate saw a gate across the roadway leading to the claimant's property *before* they purchased the property and never inquired about the use of the gate and road, *id.* at 132 | There is no evidence the roadway in question was never gated. |

The Court should reject Riddick's attempt to apply *Holden*'s holding to the vastly different facts of this case.

The other cases Riddick cites are similarly distinguishable. In *Wallace v. McKinzie*, the claimant's property was landlocked. 869 S.W.2d 592, 594 (Tex.App.–Amarillo 1993, writ denied). In contrast to *Wallace*, Riddick's property in this case is accessed via three public roadways. DX6; 2RR86. Further, the claimant in *Wallace* had a conversation with the owner of the roadway, believed what he was told, and thereafter maintained the road and made improvements to his property. 869 S.W.2d at 595. In contrast to *Wallace*, it is undisputed in this case that Riddick has never had any oral communication with Robinson about the roadway between the two properties. 3RR87. Finally, the parties in *Wallace* reached an agreement to place double locks on the gate to allow both parties access to the road and, following that agreement, the claimant continued to maintain the road. 869 S.W.2d at 595. There is no agreement between the parties in this case.

In *Thompson v. Houk*, the claimants could reach their land only by helicopter or by boat if they were unable to use the roadway in question. No. 12-04-00315-CV, 2005 WL 2035831, at *1 (Tex.App.–Tyler 2005, no pet.) (mem. op.). Here, Riddick's property is not landlocked. Further, the Tyler court reached its holding based on - - to quote the court itself - - "nothing but permissive and acquiescing behavior" on the part of the owners of the servient estate and their predecessors. *Id.*,

at *3.  Thus, *Thompson* stands in stark contrast to the facts that compelled this Court's conclusion in *Holden*.

There further is no discussion in *Thompson* of the duty requirement imposed by the Texas Supreme Court.  *See Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex.1979) (estoppel by silence arises "where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts.").  Finally, the holding in *Thompson* far exceeds the legal bounds established by the Texas Supreme Court in *Storms*: There is no estoppel to deny the existence of an alleged easement where the owner of the servient estate "mere[ly] acquiesce[s] in the making of improvements to the dominant estate."  579 S.W.2d at 453 n.7.

The *Russell v. Rawls* case is distinguishable from this case because - - to quote the El Paso court - - the servient estate owner's "conduct was more than mere acquiescence to the use of the road on her property."  No. 08-00-00546-CV, 2003 WL 1361534, at *4 (Tex.App.–El Paso 2003, no pet.) (mem. op.).  *Russell* is also distinguishable from this case because, again like so many of these cases, the dominant estate owner's property was landlocked.  2003 WL 1361534, at *4.  Further, the court found "no evidence to contradict the strong inference" that the owner of the servient estate (Van Neiman) was aware of the landlocked owner's daily

use of Van Neiman's roadway to tend to Van Neiman's needs and to bring her groceries and her mail. *Id.* Finally, there was evidence that, despite several opportunities, Van Neiman never objected to the use of the road. *Id.*

In *North Clear Lake Development Corp. v. Blackstock*, 450 S.W.2d 678 (Tex.Civ.App.–Houston [14th Dist.] 1970, writ ref'd n.r.e.), the court, in finding an easement by estoppel, considered the fact that improvements which had been made were permanent and substantial, that such improvements were open and obvious to the owner of the servient estate, that the servient estate had constructive notice of the activities of the dominant estate holders, and that such use and improvements had the tacit consent of the servient estate owners because there was no complaint made when the improvements were constructed. In contrast to *Blackstock*, Riddick's improvement to his property consisted of a concrete pad to support his Waste Management dumpster that, by Riddick's own admission, he installed - - not because of anything Robinson did or did not say or do - - to prevent damage caused by Waste Management trucks and to eliminate the need for constant repair of the asphalt. 3RR75.

In short, the compelling facts in *Holden* are not present in this case. As for the other cases Riddick cites, none involves the unique fact distinguishing this case from them: Because the roadway is located between, and may be accessed by, two public

-14-

roads, it is used by the public as well as by Riddick and Robinson. The Court should resist Riddick's effort to have this case resolved by examining the facts of other cases.

**IV.  Notice of use and notice of an easement are two different things.**

According to Riddick, Robinson "clearly had notice of the easement" because she knew the roadway was used by the apartment tenants, because she knew Riddick maintained the roadway, and because the roadway had been designated for commercial use. RIDDICK BR. at pp. 34-35. Riddick conflates notice of use with notice of an easement. They are two different things in the law.

"[N]o easement by estoppel may be imposed against a subsequent purchaser for value, who has no notice, actual or constructive, of the easement claimed." *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 873 (Tex. App.–Austin 1988, writ denied); *see also Holden*, 929 S.W.2d at 132 (affirming easement where servient owner had notice of claimant's ***claim of right of way*** on roadway in question); *Callan v. Walters*, 190 S.W. at 831-32 (to operate as notice, use must be exclusive, thereby giving notice of a claim of right). Under the applicable law, the evidence Riddick relies on for notice of an easement - - in contrast to notice of use - - is nothing more than "some suspicion linked to other suspicion produc[ing] only more suspicion, which is not the same as some evidence." *Suarez v. City of*

*Texas City*, 465 S.W.3d at 634 (quoting *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727-28 (Tex.2003).

Further, Riddick omits a key factor supporting this Court's determination in *Holden* that the owner of the servient estate had notice of the easement. "The deed [from the grantor of the servient estate] ***referencing the road*** should have put [the grantor's successor] on notice of a potential claim of right of way." *Holden*, 929 S.W.2d at 132. There is no deed in this case referencing the roadway and, thereby, putting Robinson on notice of a potential claim of right of way over the roadway. Nor is there any evidence of the other fact establishing notice of an easement in *Holden*: the servient owner's knowledge, before he bought his property, of a gate "in plain view" on the road leading to the claimant's property. *Id.*

As Robinson discussed in her opening brief, the evidence conclusively establishes the contrary of notice because Riddick's use of the roadway was not exclusive but had been used by Robinson and her predecessors for decades. ROBINSON BR. at pp. 22-23. The Court should decline Riddick's invitation to expand the law to the facts of this case.

**V.     This Court has rejected the *Scott* exception.**

Riddick acknowledges that this Court holds that "joint use is fatal to a prescriptive-easement claim[.]" RIDDICK BR. at p. 41 (citing *Estate of Trevino v.*

*Melton*, No. 04-07-00654-CV, 2009 WL 891881, at \*4 (Tex.App.–San Antonio 2009, pet. denied) (mem. op.)).  Yet, Riddick asks this Court to adopt an exception carved out by the Austin Court of Appeals and followed by the Waco Court of Appeals.  *Id.* at pp. 42-47 (citing *Scott v. Cannon*, 959 S.W.2d 712 (Tex.App.–Austin 1998, pet. denied), and *Montange v. Hagelstein*, No. 10-05-00291-CV, 2006 WL 648115 (Tex.App.–Waco 2006, pet. denied) (mem. op.).  Riddick fails to mention this Court expressly rejected the reasoning in *Scott*.

Significantly, this Court has expressly determined that *Scott*'s exception is legally infirm because "both the Texas Supreme Court and this court continue to cite joint use as a basis for rejecting a claim of easement by prescription." *RDG Partnership v. Long*, 350 S.W.3d 262, 275 (Tex.App.–San Antonio 2011, no pet.).  Based on *RDG Partnership*'s precedent, this Court should again decline to adopt *Scott*'s exception.

Further, this Court and others have distinguished *Scott*'s self-described "unique" facts and have refused to expand the exception beyond those facts. *See id.* (finding no evidence of "independent acts to show adversity . . . ***that would be similar*** to the evidence in *Scott*.") (emphasis added); *Mack v. Landry*, 22 S.W.3d 524, 531-32 (Tex.App.–Houston [14th Dist.] 2000, no pet.) (finding, after reciting the unique facts in *Scott*, that there was "***no such*** independent act of hostility to turn the

joint permissive use of the road into a prescriptive easement.") (emphasis added); *Allen v. Allen*, 280 S.W.3d 366, 379 (Tex.App.–Amarillo 2008, pet. denied) (finding *Scott* was "readily distinguishable" because of its facts); *Rinn v. Wennenweser*, No. 01-07-00763-CV, 2008 WL 2611921, at *5 n.3 (Tex.App.–Houston [1st Dist.] 2008, no pet.) (mem. op.) (finding *Scott* was factually distinguishable because of its facts). And, the dissent in *Montange* points out the legal infirmity of *Scott*. 2006 WL 648115, at *6 (Gray, C.J., dissenting) (explaining the anomaly of *Scott*'s acceptance of an argument that "exclusive use" should change based upon the nature of the case).

Riddick also posits that because "[o]nly the Apartments' tenants and their visitors are allowed to use the parking spaces accessible by the Roadway," their use is "exclusive." RIDDICK BR. at p. 43. The argument is nonsensical and, if adopted, would eviscerate the Texas Supreme Court's century-old rule that joint use is not exclusive. It goes without saying that every easement claimant uses someone else's property to access his or her [the claimant's] property. Common sense dictates that the owner of the servient estate does not use the easement over his or her own property to access the dominant-estate-owner's property. No case can be found - - and Riddick does not cite any - - that holds that the easement claimant's use of an easement to access his or her own property equates to "exclusive" use of the

-18-

easement.  The Court should decline to create new law to hold that the undisputed joint use of the roadway in this case not fatal to a prescriptive easement.

## CONCLUSION AND PRAYER

For the reasons stated in appellant's opening brief and in this Reply Brief, the Court should reverse the trial court's judgment granting Riddick an easement by estoppel and render judgment declaring that Riddick has no easement by estoppel. The trial court's judgment alternatively granting Riddick an easement by prescription should be reversed and judgment rendered that Riddick take nothing.  The trial court's judgment granting Riddick his attorney's fees should be reversed and judgment rendered that Riddick take nothing, or, alternatively, the parties' attorney's fees should be remanded for a new trial.

Respectfully submitted,

JOANN STOREY, P.C.

BY:   /s/ *JoAnn Storey*

JoAnn Storey
State Bar No. 19315300
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713/529-0048
Facsimile: 713/529-2498
Email: storeyj@heightslaw.com

***Counsel on appeal for appellant,
Kyu Im Robinson***

-19-

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this Appellants' Reply Brief is **4,013**, excluding the following: captions, table of contents, index of authorities, signature, proof of service, and certificate of compliance.

This brief complies with the typeface requirements of TRAP 9.4(e) because it uses a conventional typeface no smaller than 14-point (WordPerfect X4 14-point Times New Roman).

/s/ *JoAnn Storey*
JoAnn Storey

## CERTIFICATE OF SERVICE

On November 10, 2015, I sent a true and correct copy of the foregoing *Appellant's Reply Brief* via ProDoc® electronic filing to the following:

Michael B. Knisely
Jeffrey T. Knebel
OSBORNE, HELMAN, KNEBEL & SCOTT, LLP
301 Congress Avenue, Suite 1910
Austin, Texas 78701

*Counsel for appellee, William P. Riddick,*
    *Individually and as Trustee of the*
    *Wm P. Riddick – 76 Trust*

/s/ *JoAnn Storey*
JoAnn Storey